# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| BANCORPSOUTH BANK, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )      No. 6:10-CV-03390-DGK |
| | ) |
| ROBERT LYNN HALL (individually and as | ) |
| Trustee of the Robert Lynn Hall | ) |
| Revocable Trust), | ) |
| VICKI B. HALL (individually and as Trustee | ) |
| of the Nicole Lynn Styant Revocable Trust), | ) |
| ROBERT LYNN HALL, Jr., | ) |
| STEVEN SCOTT HALL, | ) |
| HUNTER'S POINT, LLC, and | ) |
| M & L HOLDING COMPANY | ) |
| | ) |
|     Defendants. | ) |

## ORDER GRANTING PRELIMINARY INJUNCTIVE RELIEF

This case arises out of three loans totaling almost $9 million made by Plaintiff BancorpSouth Bank to Defendant Robert Lynn Hall and a limited liability company controlled by him, Defendant Hunter's Point, LLC.  Two of the loans were secured by the outstanding common stock in M & L Holding Company, the owner of First Community Bank of the Ozarks. At the time these loans were made the outstanding common stock controlled the holding company.  After Hall defaulted on the loans he orchestrated a stock split of the outstanding preferred shares in the holding company, which effectively transferred control over the holding company to his immediate family members.  BancorpSouth subsequently filed this lawsuit against Hall and the other Defendants seeking repayment of the loan and injunctive relief.

Now before the Court is Plaintiff's request for a preliminary injunction made in Count VI of the Complaint (doc. 1).  The parties agree that there is no factual dispute here and that an

evidentiary hearing is unnecessary.[1] After reviewing the various briefs, replies, and sur-replies submitted by the parties, the Court holds BancorpSouth is entitled to a preliminary injunction.

**Provisional Findings of Fact**

The Court finds the facts to be as follows:[2]

Plaintiff BancorpSouth Bank is a Mississippi bank headquartered in Tupelo, Mississippi.

Defendant Robert Lynn Hall ("Lynn Hall" or "Hall") is the Chairman and Chief Executive Officer of First Community Bank of the Ozarks. Lynn Hall is also the Trustee of the Robert Lynn Hall Revocable Trust dated August 4, 2004 ("the Lynn Hall Trust").

Hall's wife is Defendant Vicki B. Hall. She is the Trustee of the Vicki B. Hall Revocable Trust dated August 4, 2004 ("the Vicki Hall Trust").

The children of Lynn and Vicki Hall are Robert L. Hall, Jr., Steven Scott Hall, and Nicole Lynn Styant who is the Trustee of the Nicole Lynn Styant Revocable Trust. Robert Hall Jr., Steven Hall, and Nicole Styant as Trustee of the Nicole Lynn Styant Revocable Trust are all Defendants.

Defendant Hunter's Point LLC ("Hunter's Point") is a Missouri corporation with its principal place of business in Branson. Lynn Hall is its registered agent.

Defendant M & L is the sole shareholder of First Community Bank of the Ozarks, a Missouri bank with its principal place of business in Branson, Missouri. Lynn Hall is the Chairman of the Board of Directors of M & L Holding Company ("M & L") and also serves as Chief Executive Officer, Treasurer and Secretary of the company. Vicki Hall is the Assistant

---

[1] Count V of the Complaint is an application for a temporary restraining order. After reviewing the Complaint the Court conferred with the parties who agreed that an emergency hearing was not necessary, and that the motion for a preliminary injunction could be resolved on the briefs.

[2] These findings are provisional and are not binding at trial on the merits. *See Noodles Dev., LP. v. Ninth Street Partners, LLP*, 507 F. Supp. 2d 1030, 1034 (E.D. Mo. 2007) (observing that "[t]he general rule is that findings of fact and conclusions of law made in a court's disposition of a motion for preliminary injunction are provisional.")

Vice President and Assistant Secretary of M & L. Lynn and Vicki Hall are also M & L's sole directors. Steven Hall is the Senior Vice President of M & L.

**The Stock Loan**

On October 5, 2009, for value received, Lynn Hall as maker executed a promissory note in favor of Bancorp South in the principal amount of $6.8 million. Payment of this loan ("the Stock Loan") was secured by 51,238 common shares in M & L pledged by the Lynn Hall Trust, and 51,238 common shares in M & L pledged by Vicki Hall Trust. These 102,476 shares constituted all of the common stock in M & L.

On February 4, 2010, the Stock Loan matured and all principal and interest outstanding became due and payable. The loan was not paid and is in default. As of September 17, 2010, the principal amount owed under the loan is $6.8 million and the accrued interest and other charges amount to $212,500. Interest continues to accrue on the unpaid principal at $944.44 per day. On March 24, 2010, BancorpSouth made a final demand upon Hall, and he did not pay.

**The Working Capital Loan**

On October 5, 2009, for value received, Lynn Hall as maker executed a promissory note in favor of BancorpSouth in the principal amount $100,000. Payment of this loan ("the Working Capital Loan") was secured by the M & L common stock and by a deed of trust covering a plot of land known as the Patterson Duck Club, a subdivision of Stone County, Missouri.

On February 4, 2010, the Working Capital Loan matured and all principal and interest outstanding became due and payable. The loan was not paid and is in default. As of September 17, 2010, the principal amount owed under the loan is $100,000 and the accrued interest and other charges amount to $3,125. Interest continues to accrue on the unpaid principal at $13.89 per day. On March 24, 2010, BancorpSouth made a final demand upon Hall and he did not pay.

**The Real Estate Loan**

On October 5, 2009, for value received, Hunter's Point, through its authorized member, Lynn Hall, executed a promissory note in favor of BancorpSouth in the principal amount $1.49 million. Payment of this loan ("the Real Estate Loan") was secured by a deed of trust covering certain real property located in Stone County, Missouri.

On February 4, 2010, the Real Estate Loan matured and all principal and interest outstanding became due and payable. The loan was not paid and is in default. As of September 17, 2010, the principal amount owed under the loan is $1.49 million and the accrued interest and other charges amount to $46,562.50. Interest continues to accrue on the unpaid principal at $206.94 per day. On March 24, 2010, BancorpSouth made a final demand upon Hunter's Point and it did not pay.

**The Guaranties**

In consideration of BancorpSouth making the Stock Loan and Working Capital Loan, the Lynn Hall Trust, the Vicki Hall Trust, and Vicki Hall each executed a commercial guaranty whereby they unconditionally guaranteed payment of all indebtedness owed by Lynn Hall to BancorpSouth. In consideration of BancorpSouth making the Real Estate Loan to Hunter's Point, the Lynn Hall Trust, the Vicki Hall Trust, Lynn Hall and Vicki Hall each executed a commercial guaranty whereby they unconditionally guaranteed payment of all indebtedness owed by Hunter's Point to Plaintiff. The guarantors have all failed to pay the outstanding balances on the loans.

**The Stock Split**

Under the M & L certificate of incorporation, each common and preferred share of stock in M & L is entitled to one vote. On February 4, 2010, the date the loans matured, the common stock consisted of 102,476 shares, the preferred stock consisted of 20,072 shares, and the certificate of incorporation allowed for the issuance of no more than 30,000 shares of preferred stock. The owners of the common stock thus benefitted from a control premium in M & L by a ratio of more than five to one.

After being notified by BancorpSouth that the Stock Loan and Working Capital Loan were in default and would not be renewed, on or about June 1, 2010, M & L, working through Hall, amended its Certificate of Incorporation to substantially increase the number of preferred shares which could be issued from 30,000 to 300,000. Following the amendment M & L issued additional preferred shares, or "split" the preferred stock, to its preferred shareholders by a factor of ten. M & L's preferred stock is now issued as follows: 61,940 shares to Robert Hall Jr.; 36,660 shares to Steven Hall; 49,310 shares to the Styant Trust; and 52,810 shares to the Lynn Hall Trust. The effect of the stock split was to substantially impair the value of the common stock held by BancorpSouth as collateral on the defaulted loans.

The parties dispute whether Lynn Hall, M & L, and its officers and directors orchestrated the split with the purpose of hindering, delaying, and/or defrauding BancorpSouth with respect to collection of amounts owed under the Stock Loan, Working Capital Loan, and the guarantees.

Roughly two weeks after the stock split Lynn Hall entered into fourteen separate contracts for the sale of fourteen boat slips at Table Rock Lake which he owned and which were part of a dock adjoining property owned by Lynn and Vicki Hall. The record is silent as to how

much Hall received for the boat slips. BancorpSouth contends their market value exceeded $350,000.

## Discussion

I. **Standard for issuing a preliminary injunction.**

In determining whether to grant a preliminary injunction the Court considers: (1) the threat of irreparable harm to the movant; (2) the balance between this harm and any injury that granting the injunction will inflict on the non-moving party; (3) the likelihood that the moving party will prevail on the merits; and (4) the public interest. *Phelps-Roper v. Nixon*, 509 F.3d 480, 484 (8th Cir. 2007). No single factor is determinative, they must be "balanced to determine whether they tilt towards or away" from granting the injunction. *Noodles Dev., LP. v. Ninth Street Partners, LLP*, 507 F. Supp. 2d 1030, 1034 (E.D. Mo. 2007). An injunction is an extraordinary remedy and the movant bears the burden of establishing the need for such relief. *Id*.

II. **BancorpSouth is entitled to a preliminary injunction.**

Plaintiff's request for an injunction is based on Missouri's Uniform Fraudulent Transfer Act ("the Act"),[3] which is modeled after the Uniform Fraudulent Transfer Act. In relevant part the Act provides that, "A transfer made . . . is fraudulent as to a creditor . . . if the debtor made the transfer . . . With actual intent to hinder, delay, or defraud any creditor of the debtor." Mo. Rev. Stat. § 428.024.1 (2009). The Act provides for injunctive relief, including "avoidance of the transfer in order to satisfy the creditor's claim," "an injunction against further disposition by

---

[3] In its initial brief Plaintiff states that its "request for a temporary restraining order is based on Missouri's Uniform Fraudulent Transfer Act." Suggestions in Support (doc. 7) at 2. It did not seek an injunction under any other theory of liability. In its reply Plaintiff suggested for the first time that "the Act is not an exclusive remedy by which fraudulent transfers may be voided," and that the Court could enter an injunction on other equitable grounds. The Court will not consider an alternate argument for granting the injunction raised for the first time in a reply brief.

the debtor or transferee, or both, of the asset transferred or of other property," and "any other relief the circumstances may require." Mo. Rev. Stat. § 428.039 (2009).

### A. BancorpSouth has a fair chance of prevailing on the merits.

To demonstrate likelihood of success on the merits, a movant does not need to show that it ultimately will succeed on its claims, only that the movant's prospects for success is *sufficiently likely* to support the kind of relief it requests. *Noodles Dev., LP.*, 507 F. Supp. 2d at 1034 (emphasis added) (citations omitted). That is, the movant need only show "a fair chance of prevailing." *Phelps-Roper*, 509 F.3d at 485.

BancorpSouth argues there is a high probability it will succeed on the merits of its fraudulent conveyance claim (Count IV). It contends that the Act protects both secured and unsecured creditors; that the Act defines transfers broadly; that the stock split was a transfer of property designed to deprive BancorpSouth with the ability to sell voting control in M & L; and that there are several indicia of fraud present which give rise to a strong inference of fraud.[4] In response Defendants argue that the act does not protect secured creditors and that temporary restraining orders are not available to unsecured creditors under Rule 65(b).

The Court does not need to address all of these arguments to determine that the movant has established likelihood of success on the merits. The Court finds as follows.

### 1. The Act protects secured creditors.

Defendants' best argument is that the Act does not protect unsecured creditors. There is no reported caselaw that directly addresses whether a secured creditor can invoke the Act's protection, probably because secured creditors rarely need to invoke the Act to insure that they

---

[4] In its initial brief BancorpSouth also argued that Hall had transferred the fourteen boat slips at Table Rock Lake with intent to hinder, delay, or defraud it and prevent it from reaching these assets as part of its collection efforts. In response, Lynn Hall argued that he was essentially required to sell these slips because the dock lease with the Corps of Engineers had expired, and that under the circumstances a sale of the dock and slips was the best way to preserve the value of the asset. BancorpSouth has subsequently abandoned this argument.

are repaid.  Although the Act was designed to protect unsecured creditors, *Fleming Companies, Inc. v. Rich*, 978 F.Supp. 1281, 1294 (E.D.Mo. 1997), the Court finds the Act's language is sufficiently broad to encompass the claims of secured creditors as well.  Under the Act a "claim" is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, *secured,* or unsecured."  Mo. Rev. Stat. § 428.009(3) (2009) (emphasis added).  Although the Act defines "assets" to exclude collateral, Mo. Rev. Stat. § 428.009(2) (2009), this exclusion is for purposes of calculating whether a given debtor is insolvent, not to exclude secured claims from the Act's protection.

**2.     BancorpSouth has a fair chance of prevailing on the merits of its fraudulent conveyance claim.**

The elements of a fraudulent conveyance claim under the Act are "(1) a conveyance or assignment (2) of goods, chattels, things in action or interest in land (3) with the intent to hinder, delay or defraud creditors."  *Behr v. Bird Way, Inc.*, 923 S.W.2d 470, 773 (Mo. Ct. App. 1996).  The first and second elements are satisfied, the question is whether Lynn Hall and the other Defendants acted with the requisite intent.

In determining whether the debtor's transfer of assets was done with fraudulent intent, a court may consider whether:

> (1) The transfer or obligation was to an insider;[5]
>
> (2) The debtor retained possession or control of the property transferred after the transfer;
>
> (3) The transfer or obligation was disclosed or concealed;
>
> (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

---

[5] The term "insider" includes a relative of the debtor.  Mo. Rev. Stat. § 428.009(2) (2009).

8

> (5) The transfer was of substantially all the debtor's assets;
>
> (6) The debtor absconded;
>
> (7) The debtor removed or concealed assets:
>
> (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
> (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred . . .

Mo. Rev. Stat. § 428.024.2 (2009). "The presence of one badge of fraud alone does not support a finding of actual intent to defraud; however, the presence of several indicia of fraud may give rise to a strong inference of fraud." *In re Seitz*, 400 B.R. 707, 714 (Bankr. E.D. Mo. 2008).

In this case the Court finds the four of these indicia are present. First, the transfer here was to an insider. The debtor on the Stock Loan and the Working Capital Loan, Lynn Hall, transferred the property at issue—voting control of the holding company—to his children, Steven Hall, Robert Hall Jr. and a trust controlled by his daughter. Second, the debtor likely retained control of the property after the transfer. By transferring control of the preferred stock to his children, Lynn Hall retained voting control of the holding company. Third, before this transfer was made, the debtor had been threatened with suit. Lynn Hall had been notified that the loans were in default and would not be renewed; the logical next step for BancorpSouth was to file a lawsuit, which it did. Fourth, the debtor removed assets. By transferring voting control of the holding company to his children via the stock split, Lynn Hall removed an asset beyond BancorpSouth's reach. Because there are multiple badges of fraud here, this gives rise to a strong inference of fraud, and the Court finds that the transfer was likely undertaken with fraudulent intent.

Given that all of the elements of a fraudulent conveyance claim are satisfied, BancorpSouth has demonstrated a likelihood of success on the merits.

**B.     There is a threat of irreparable harm to BancorpSouth.**

To demonstrate a sufficient threat of irreparable harm the moving party must show that there is no adequate remedy at law, that is, that an award of damages cannot compensate the movant for the harm. *See Noodles Dev.*, 507 F.Supp.2d at 1036-37. BancorpSouth seeks an injunction prohibiting Defendants from (1) further amending the M & L Certificate of Incorporation; (2) further transferring any shares of preferred stock in M & L; and (3) prohibiting Defendants Lynn Hall, the Lynn Hall Trust, Vicki Hall, and the Vicki Hall Trust from further transferring any property or assets in their possession or control. Defendants argue that corrective relief will be available to BancorpSouth at the conclusion of the litigation if it prevails, that BancorpSouth will still have contractual and UCC remedies available to it, and that money damages are adequate to compensate it for any damages.

The Court notes that if a preliminary injunction is not issued Defendants will be free to create and transfer preferred shares in M & L, destroying the control premium associated with owning the common stock, and that it would be difficult, if not impossible, to undue a series of sales or other transactions disposing of newly created preferred shares at the conclusion of the litigation if BancorpSouth were to prevail. It is also unlikely that if BancorpSouth prevails it will be able to fully recover any property or assets Defendants dispose of during the pendency of the litigation, or that money damages will adequately compensate it. Accordingly there is a threat of irreparable harm to BancorpSouth if the Court fails to enter the injunction.

**C.    The threat of irreparable harm to BancorpSouth outweighs any risk of injury granting the injunction will inflict on Defendants.**

Defendants argue that granting the injunction will inflict harm on those Defendants who were not parties to any of the loan transactions with BancorpSouth (namely Robert Hall Jr., Steven Hall, and the Nicole Lynn Styant Revocable Trust), by depriving them of "a substantial portion of their personal assets," and that this harm outweighs the threat of irreparable harm to BancorpSouth.

Nothing in the record indicates that the newly created M & L preferred shares are a substantial portion the children's assets so that enjoining Defendants from transferring the preferred stock will harm them.  Indeed, the sole purpose of the stock split appears to have been to ensure that control of the bank holding company remained in the Hall family and to deprive BancorpSouth of the control premium associated with the common stock.  Given that the children paid nothing for the additional preferred shares and that there was no legitimate business purpose to the stock split, the split and associated transfer of the control premium to these Defendants was a pure windfall to them.  Prohibiting them from transferring any preferred shares during the pendency of this litigation will leave them in the same position they were in before the stock split, thus there is no risk of injury to them.

**D.    The public interest does not weigh for or against granting the injunction.**

Neither party has argued that the public interest will be affected one way or the other by granting the injunction.  The Court notes that society has an interest in ensuring that debtors not be allowed to frustrate legitimate collection effects by creditors.  Although the Court gives this factor little weight, it finds that to the degree the public interest will be effected one way or the other, the public interest weighs in favor of issuing the injunction.

## Conclusion

Finding that the four factors all weigh in favor of granting a preliminary injunction, the Court ORDERS that a preliminary injunction be entered against Defendants as follows:

1. Defendants shall not further amend the M & L Certificate of Incorporation;

2. Defendants Robert Lynn Hall, the Robert Lynn Hall Trust, Vicki Hall, the Vicki Hall Trust, Robert Hall Jr., Steven Hall, the Styant Trust, and M & L are enjoined from further disposition, transfer or encumbrance of any shares of preferred stock in M & L;

3. Defendants Robert Lynn Hall, the Robert Lynn Hall Trust, Vicki Hall and the Vicki Hall Trust are enjoined from further disposition, transfer or encumbrance of any property or assets in their possession, custody or control, whether directly or indirectly.

This Order shall go into effect upon Plaintiff's posting a surety bond in the amount of $50,000, and shall remain in effect until such time as this Court orders otherwise. In the alternative to posting a surety bond, Plaintiff may deposit $50,000 in the Court registry.

**IT IS SO ORDERED.**

Date:   February 7, 2011                              /s/ Greg Kays
                                                     GREG KAYS, JUDGE
                                                     UNITED STATES DISTRICT COURT